IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 18, 2007

## TOMMY L. WATSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County
No. 2003-D-2693    Steve Dozier, Judge**

_____

**No. M2006-01814-CCA-R3-PC - Filed July 27, 2007**

_____

The petitioner, Tommy L. Watson, pled guilty to vehicular homicide (Class B felony) and reckless endangerment (Class E felony) in exchange for a sentence of twelve years. On appeal, he contends that he received ineffective assistance of counsel and submits that his guilty pleas were not knowingly and voluntarily entered. After review, we conclude that no error exists and affirm the judgment from the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

Ryan C. Caldwell, Nashville, Tennessee, for the appellant, Tommy Lee Watson.

Robert E. Cooper, Jr., Attorney General and Reporter; Preston Shipp, Assistant Attorney General; Victor S. (Torry) Johnson, III, District Attorney General; and Kristen Shea, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The defendant was indicted for aggravated vehicular homicide, leaving the scene of an accident, and driving on a revoked license. He later pled guilty to vehicular homicide and reckless endangerment in exchange for a sentence of twelve years. He filed a petition for post-conviction relief and, after a hearing on the petition, was denied any relief. On appeal, he contends that he received ineffective assistance of counsel and, as a result, entered his guilty plea unknowingly and involuntarily.

> The facts underlying the case, as recited during the guilty plea hearing are as follows:
> [O]n the night of July second, at about nine -- about nine in the evening, Ms. Rosemarie Ashburn, a sixty-five-year-old lady, was walking with her granddaughter

along the shoulder of Gallatin Road, at about the Fourteen-hundred block, when she was struck from behind by a vehicle driven by Tommy Watson.

She was struck and knocked over a bridge and killed. Her granddaughter, who was walking immediately next to her, escaped injury.

A good Samaritan, Mr., I believe, Sean Smith, was driving in the area at that time and saw the entire incident, immediately realized what had happened, got in behind the truck that Mr. Watson was driving, began following him, and called Nine-One-One, giving the description of the truck and the license plate.

The Nine-One-One operators convinced Mr. Smith that following the Defendant was the wrong thing to do and directed him back to the scene.

When the police officers responded, they were unable to locate Mr. Watson. Based on the information about the truck they had received, they went to investigate another individual, whose truck it was, who was not with -- with Mr. Watson at the time and actually lived outside the city; and they had no leads as to Mr. Watson's identity at that point.

A plea for help was put out on the ten o'clock news that night. The next morning, while on routine patrol, a police officer was flagged down by a man who lived in an apartment com -- complex several blocks away, indicating that he believed he had seen the truck involved in the crash the night before.

The officer observed the truck, did see physical evidence indicating that it most likely was the truck involved in the crash the night before; was calling for backup, when Mr. Watson approached him, basically indicating that he believed that he was the man the officer was looking for and that he was in the process of calling in to work to tell them he would not be there that day.

Mr. Watson was taken into custody; made statements to the police that he did have memory of the incident before, although it was blurry; that he had, in fact, been drinking.

He still had an odor of alcoholic beverage the next morning, when the officers got him into custody.

His live-in girlfriend was interviewed, who indicated he had come home the night before at about the right time that would've matched with the crash; that he had immediately called his mother, indicating he was in some trouble; and that he had nothing further to drink, after he got home that night.

Mr. Watson was given a blood-alcohol test at nine o'clock the following morning, approximately twelve hours after the crash, and registered at a zero-seven percent still, twelve hours after the crash. He was taken into custody and charged at that point.

All of these events occurred in Davidson County. And, based upon those facts, Your Honor, we do ask the Court to accept the previously-recommended dispositions as to Mr. Watson in this case.

The petitioner agreed that the summary of facts offered by the State was true and correct, and the court accepted his plea of guilty. Further, the petitioner stated during the guilty plea hearing that he had met with his counsel and was pleased with her representation.

During the post-conviction hearing, the petitioner said that he met with counsel twice for a total of less than an hour. His recollection of one meeting involved counsel indicating that the State would offer a plea agreement of an eight-year sentence. He said that he was unaware of a twelve-year offer. The petitioner also contended that he was sick on the day of his guilty plea hearing and did not remember the hearing or signing the guilty plea. He said that counsel told him he should accept the State's offer because he would be released in eleven months to one year. On cross-examination, he said that he did not inform anyone that he was ill or in pain. The petitioner said he did not recall the judge asking him if he was taking any medication that could affect his judgment. He agreed that he would have been truthful if he had been asked about medication or counsel's representation. He said he pled guilty because he thought he was getting a better deal than would have been possible if he had proceeded to trial.

Counsel testified that she was the third public defender involved in the petitioner's case. She said that she was familiar with the circumstances surrounding the charges. She recalled that the petitioner had some health problems and was very sick during the time that she represented him, but his mental health was never at issue. She testified she had notes from at least three meetings with the petitioner and said she believed there was a fourth meeting. Counsel stated that there was no way to contest that the petitioner's vehicle struck the victim while the petitioner was intoxicated. She said the weakest part of the State's case dealt with the petitioner's prior convictions, and she persuaded the State to allow the petitioner to plead to a Class B felony.

Counsel maintained that she did not tell the petitioner that there had been an eight-year offer. She said that he indicated during their second meeting that he wanted a twelve-year offer, but she told him the State would not make such an offer at that time. He then told her he would take a fifteen-year sentence rather than go to trial. She testified that she calculated what it would take to flatten a fifteen-year sentence and explained to him his parole eligibility, but counsel said that she never told him that the thirty-percent release eligibility meant he would be paroled automatically. She acknowledged she may have told the petitioner that, based on his age, lack of violent history, and health concerns, the possibility of parole was favorable.

She said she would have notified the court if she thought the petitioner did not know what was going on when he entered his plea. She testified that the petitioner wanted to avoid going to trial and that he preferred to enter a plea agreement. Counsel stated that it was her practice to thoroughly review guilty plea petitions with her clients and said that, in this case, the plea referred to a twelve-year sentence.

**Analysis**

The petitioner contends that he received ineffective assistance of counsel and submits that his guilty pleas were not knowingly and voluntarily entered. He argues that he did not realize that he was agreeing to a twelve-year sentence when he entered his guilty pleas. The State argues that the petitioner's claims are without merit.

When a claim of ineffective assistance of counsel is made under the Sixth Amendment, the burden is upon the complaining party to show that (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair. See Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases. In reviewing counsel's conduct, a "fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; see Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order or to address both if the petitioner makes an insufficient showing on either. Strickland, 466 U.S. at 697, 104 S. Ct. at 2069. In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. Burns, 6 S.W.3d 453, 463 (Tenn. 1999) (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

The petitioner bears the burden of proving the factual allegations that would entitle the petitioner to relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f). We review the post-conviction court's factual findings underlying a claim of ineffective assistance of counsel under a de novo standard with a presumption that those findings are correct, unless the preponderance of the evidence establishes otherwise. Burns, 6 S.W.3d at 461. However, the post-conviction court's conclusions of law, such as whether counsel's performance was deficient or whether that deficiency was prejudicial, are reviewed under a de novo standard with no presumption of correctness. Fields v. State, 40 S.W.3d 450, 457 (Tenn. 2001) (citations omitted).

-4-

Here, the post-conviction court held that the petitioner acknowledged on the record that he reviewed the plea petition with counsel and indicated that he was aware of and understood his rights. The guilty plea hearing transcript reflects that the petitioner was asked if he was under the influence of any medication. He notified the court that he was taking antibiotics but that they did not affect his ability to understand what he was doing and, further, that he understood the charges against him. He indicated that he had met with counsel and that he was satisfied with her representation. When asked if he understood that he was receiving a twelve-year sentence to be served in the Department of Correction, he indicated in the affirmative.

Our review of the transcript reflects that the State correctly argues that the petitioner never objected when the prosecutor announced multiple times during the guilty plea hearing that the agreed sentence would be twelve years. He did not object when the court asked him if he understood his sentence to be twelve years. Therefore, we must conclude that the petitioner knowingly, voluntarily, and intelligently pled guilty and that he is not entitled to post-conviction relief on this issue.

Next, the petitioner argues that counsel was ineffective. As previously stated, the burden is on the petitioner to show that counsel's services were deficient and that counsel's deficient performance was prejudicial. As to guilty pleas, the petitioner must establish that, but for counsel's errors, the petitioner would not have entered the plea and would have insisted on proceeding to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). This court will not disturb the findings of fact entered by the post-conviction court unless the evidence preponderates against them. Fields v. State, 40 S.W.3d 450, 456-57 (Tenn. 2001). In determining whether a guilty plea comports with due process, this court must assess whether the plea "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31, 91 S. Ct. 160 (1970). "A court charged with determining whether those pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

The petitioner argues that counsel was ineffective for meeting with him only twice and for failing to communicate effectively to him that he was agreeing to a twelve-year sentence. The State argues that counsel was effective and contends that the post-conviction court was correct in concluding that it was only necessary for counsel to meet with the petitioner on two occasions because he made it known to her that he wanted to plead guilty. We agree with the State.

Counsel testified that she met with counsel either three or four times. She successfully attacked what she viewed as the weakest point in the State's case which allowed the petitioner to plead to a Class B felony rather than the charged Class A felony. The petitioner indicated to counsel

that he would be willing to accept an offer of fifteen years which was more time than the eventual agreement.

When considering the circumstantial factors surrounding the plea as suggested by our supreme court in <u>Blankenship</u>, we must conclude that the petitioner's pleas were voluntary and intelligent and were not the result of ineffective counsel. The petitioner was facing substantially more time in confinement if he proceeded to trial. He told counsel that he wanted to avoid going to trial, and her testimony reflects that she secured the best possible plea offer for him under the circumstances. The petitioner had several prior driving- related offenses, including more than one Driving Under the Influence, that could have potentially been used against him had he proceeded to trial.

Finally, the petitioner has failed to carry his burden of proof that counsel was ineffective and that, but for counsel's ineffective representation, he would not have entered his plea of guilty. The record is devoid of evidence to support the petitioner's contention that he would not have pled guilty had he been represented differently. Because he has failed to carry his burden, we must affirm the denial of post-conviction relief.

## Conclusion

Based on the foregoing and the record as a whole, we affirm the judgment from the post-conviction court.

_____

JOHN EVERETT WILLIAMS, JUDGE